IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–01146–REB–KMT

JONATHAN WOODSTOCK,

      Plaintiff,

v.

KATHLEEN BOYD,
MS. SPANOZI,
MR. HODGE,
MS. MARTIN,
SHARRON PHILLIPS,
PAUL LARSON, and
CAROL BROWN,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

    This case comes before the court on "Defendant Betty Spinuzzi's[1] Motion to Dismiss

Plaintiff's Complaint" (Doc. No. 23, filed Aug. 9, 2013) and Defendant Boyd, Hodge, Phillips,

Larson, and Brown's (hereinafter, collectively, the "CDOC Defendants") "Motion to Dismiss

---

1 Although Plaintiff's Complaint refers to this defendant as "Ms. Spanozi," her motion clarifies
that her surname is correctly spelled "Spinuzzi."   The court uses the correct spelling in this
Recommendation.

1

Plaintiff's Amended Complaint" (Doc. No. 28, filed Sept. 9, 2013).[2]   For the following reasons, Defendants' Motions to Dismiss are GRANTED.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Amended Prisoner Complaint (Doc. No. 15, filed June 21, 2013) and the parties briefing with respect to the Recommendation.   At the time of the events outlined in his Amended Complaint, Plaintiff was an inmate with the Colorado Department of Corrections incarcerated at the Centennial Correctional Facility (CCF), then Sterling Correctional Facility (SCF), and, finally, at San Carlos Correctional Facility (SCCF).

On or about January 25, 2012, Plaintiff was taken to a local hospital in Fremont County after he was assaulted at CCF by two inmates.   (*Id.* at 6.)   Plaintiff suffered several injuries, including an inguinal hernia.   (*Id.*)

After Plaintiff returned from the hospital, Defendant Boyd, a Physician's Assistant at CCF, diagnosed Plaintiff with an inguinal hernia.   (*Id.*)   However, Defendant Boyd allegedly "refused to give the plaintiff the necessary medical care, as outlined by the Executive Director under the Colorado Revised Statutes."   (*Id.*)   More specifically, Defendant Boyd informed Plaintiff that she would not provide him with pain medication, or a hernia truss, or refer him for a

---

[2] Defendant Martin has not been served with Plaintiff's Amended Complaint.   (*See* Waiver of Service, Doc. No. 20, filed July 11, 2013.)   The court has recommended that Defendant Martin be dismissed without prejudice as a Defendant for failure to effectuate service within the time constraints of Fed. R. Civ. P. 4(m).   (*See* Recommendation, Doc. No. 43, filed Dec. 19, 2013.) Accordingly, the court does not address Plaintiff's claims against Defendant Martin in this Recommendation.   The court does, however, include Plaintiff's allegations against Defendant Martin in the factual background section for sake of clarity.

surgery consultation.   (*Id.*)   Defendant Boyd stated "you do not need surgery" and that "it is

DOC policy to not refer to surgery unless it is life threatening."   (*Id.*)   In addition, on

subsequent visits, Defendant Boyd refused to offer or give Plaintiff medication for his hernia.

(*Id.* at 7.)

Defendant Spinuzzi, another Physician's Assistant at CCF, also saw Plaintiff for his

"hernia complications."   (*Id.*)   Although Plaintiff maintains that Defendant Spinuzzi

"knowingly refused to treat" him, she elected to refer him for a surgical consultation.   (*Id.*)

Plaintiff maintains, however, that she only did so "in order to deter him from frequent medical

appointments."   (*Id.*)   Plaintiff alleges even though Defendant Spinuzzi recognized the need for

surgery, she nevertheless refused to give him pain medication or a hernia truss pursuant to CDOC

protocol.   (*Id.*)

Plaintiff also saw Defendant Hodge, a medical doctor at CCF.   (*Id.* at 8.)   Defendant

Hodge also denied Plaintiff a hernia truss and pain medication, allegedly "ignoring all of

[Plaintiff's] visable [sic] and other complications indicative of his previously [sic] diagnosed

hernia."   (*Id.*)   Plaintiff alleges this" resulted in further debilitation of [his] diagnosed

condition."   (*Id.*)

Plaintiff was later assigned to work duty assignments by Defendant Brown, his supervisor

at CCF.   (*Id.*)   Plaintiff alleges that on more than one occasion between May and August 2012,

he provided Defendant Brown with the "necessary documentation" detailing his previously

diagnosed hernia.   (*Id.*)   Defendant Brown allegedly ignored Plaintiff's complaints of "physical

distress and excruciating pain" and refused to release Plaintiff from his work detail.   (*Id.*)
Plaintiff maintains that this violated the CDOC's Executive Directive relating to requests for
accommodation and inflicted further injury to his hernia.   (*Id.*)

Plaintiff subsequently brought his injuries, his medical documentation, and Defendant
Brown's purported failure to comply with the CDOC's Executive Directive to the attention of
Defendant Larson, a Lieutenant at CCF and Defendant Brown's supervisor.   (*Id.* at 9-10.)   In
addition, on several occasions thereafter, Plaintiff contacted Defendant Larson when he was in
"obvious physical distress."   (*Id.* at 10.)   Defendant Larson dismissed Plaintiff's claims "in
totality."   (*Id.*)   Plaintiff alleges that Defendant Larson also violated the CDOC's Executive
Directive relating to requests for accommodation by forcing Plaintiff to continue to participate in
work detail on a daily basis.   (*Id.*)   Plaintiff maintains that Defendant Larson should have
reassigned Plaintiff to a lighter work detail and that, by refusing to do so, caused additional injury
to his hernia.   (*Id.*)

On or about August 7, 2012, Plaintiff was transferred to SCF.   (*Id.* at 11.)   Upon his
arrival to SCF intake, the SCF medical department documented Plaintiff's injuries, including his
hernia.   (*Id.*)   Plaintiff subsequently saw Defendant Martin, a medical doctor at SCF.   (*Id.*)
More specifically, on two separate occasions, Defendant Martin reviewed Plaintiff's medical
chart and summoned him for a medical appointment concerning his hernia.   (*Id.* at 11.)
Defendant Martin refused to provide Plaintiff with pain medication and a referral to surgery,
even though his hernia was "visably [sic] debilitating."   (*Id.*)   Plaintiff maintains that Defendant

Martin failed to follow the protocols for standard medical care outlined in the CDOC's

Administrative Regulations.   (*Id.*)

Approximately eight months after his transfer to SCF, Plaintiff was transferred to SCCF.

(*Id.* at 13.)   Upon his arrival at SCCF, Defendant Phillips, a Nurse Practitioner at SCCF,

reviewed Plaintiff's medical chart and scheduled him for an appointment.   (*Id.*)   Defendant

Phillips assessed Plaintiff's hernia and made additional notations in Plaintiff's medical chart.

(*Id.*)   Defendant Phillips saw Plaintiff "in obvious physical pain," but declined to provide

Plaintiff with pain medication or a hernia truss, and refused to schedule him for a surgery

consult. (*Id.*)   Instead, Defendant Phillips stated to Plaintiff that he "did not need further medical

treatment."   (*Id.*)

## PROCEDURAL HISTORY

Plaintiff's Amended Complaint was filed on June 21, 2013.   Plaintiff asserts four claims

for relief, pursuant to 42 U.S.C. § 1983, each alleging that Defendants violated his Eighth

Amendment right to be free from cruel and unusual punishment by exhibiting deliberate

indifference to his serious medical needs.   Plaintiff's claims are asserted against Defendants in

both their official and individual capacities.   Plaintiff seeks compensatory and punitive damages,

declaratory relief, and an injunction ordering Defendants to (1) provide him with pain medication

and a hernia truss and (2) schedule him for hernia surgery.

Defendant Spinuzzi's Motion was filed on August 9, 2013. (*See* Spinuzzi Mot.)

"Plaintiff's Declaration & Objection to Dismiss" (Doc. No. 25)—which the court construes and

hereinafter refers to as Plaintiff's Response to Defendant Spinuzzi's Motion to Dismiss—was filed on August 16, 2013.   (Doc. No. 25 [Resp. Spinuzzi Mot.].)   Defendant Spinuzzi's Reply was filed on August 30, 2013.   (Doc. No. 26 [Spinuzzi Reply].)

The CDOC Defendants Motion to Dismiss was filed on September 9, 2013.   (*See* CDOC Defs. Mot. Dismiss.)   "Plaintiff's Declaration and Argument in Opposition to Defendant's Motion," which the court hereinafter refers to as Plaintiff's Response to the CDOC Defendants' Motion to Dismiss, was filed on September, 18, 2013.   (Doc. No. 30. [Resp. CDOC Defs. Mot.].)   The CDOC Defendants' Reply was filed on October 2, 2013.   (Doc. No. 33 [CDOC Defs. Reply].)

Accordingly, these matters are ripe for the court's review and recommendation.

## LEGAL STANDARDS

### A.    **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.   The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."   *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).   A court may not assume that a plaintiff can prove facts that have not been

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.   *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

## B.     *Lack of Subject Matter Jurisdiction*

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).   Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.   Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).   A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."   *See Basso*, 495 F.2d at 909.   The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of

7

jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

C.      *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v.*

8

*Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   The *Iqbal* evaluation requires two prongs of analysis.   First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.   *Id.* at 1949–51.   Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."   *Id.* at 1951.   If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.   *Id.* at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.   *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).   "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'   Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   *Id.* at 1949 (citation omitted).   "Where a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"   *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

## ANALYSIS

### A.    *Eleventh Amendment Immunity*

The CDOC Defendants argue that to the extent Plaintiff's claims seek money damages against them in their official capacities, they are barred by Eleventh Amendment immunity. (CDOC Defs. Mot. at 4.)[3]   The court agrees.

The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   U.S. Const. amend. XI.   It has been interpreted to bar a suit by a citizen against the citizen's own state in federal court.   *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).   Suits against state officials in their official capacity should be treated as suits against the state.   *Hafer v. Melo*, 502 U.S. 21, 25 (1991).   This is because a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself.   *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71

---

[3] To the extent that Defendant Spinuzzi has not lodged a similar argument with respect to the official-capacity claims against her, the court may resolve issues of subject matter jurisdiction *sua sponte*.   *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988).

(1989).   The Eleventh Amendment thus shields state officials, acting in their official capacities,

from claims for monetary relief.   *See Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007).

Moreover, a § 1983 action may only be brought against a person.   *See* 42 U.S.C. § 1983.

Neither states nor state officials sued in their official capacity for monetary damages are persons

within the meaning of § 1983.   *Will*, 491 U.S. at 70–71.

Plaintiff's claims for money damages against the Defendants in their official capacities

constitute claims against the CDOC.   Therefore, Plaintiff's official capacity-claims for money

damages are barred by the Eleventh Amendment and are properly dismissed for lack of subject

matter jurisdiction.   *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994).

Plaintiff also seeks declaratory and injunctive relief.   The Eleventh Amendment does not

necessarily bar actions in federal court seeking injunctive relief against state officials in their

official capacity.   *See Will*, 491 U.S. at 71 n. 10 ("Of course a state official in his or her official

capacity, when sued for injunctive relief, would be a person under § 1983 because

official-capacity actions for prospective relief are not treated as actions against the State.")

(internal quotation marks and citation omitted); *Ex parte Young*, 209 U.S. 123, 159-60 (1908)

(holding that the Eleventh Amendment generally does not bar official-capacity claims seeking

prospective injunctive relief from a state official).   Nevertheless, to the extent that Plaintiff seeks

retrospective declaratory relief—by way of a declaration that "the acts and omissions described

herein violate[d] his rights" (*see* Am. Compl. at 16)—such claims are barred by the Eleventh

Amendment.   *Meiners v. University of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004).   Therefore,

Plaintiff's official capacity-claims for declaratory relief are also barred by the Eleventh Amendment.   Finally, to the extent that Plaintiff seeks injunctive relief against Defendants in their official capacity, they are properly dismissed for failure to state claim, as discussed *infra*.[4]

**B.     Failure to State a Claim for Relief**

All four of Plaintiff's claims allege that Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.   The Eighth Amendment proscribes deliberate indifference by prison officials to an inmate's serious medical need.[5] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   A "deliberate indifference" claim involves both an objective and a subjective component.   *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).   To satisfy the objective prong, a prisoner must demonstrate that his medical need is "objectively, sufficiently serious."   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation and quotation marks omitted).   A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person

---

[4]  Plaintiff has been released from prison and it appears he is on parole.   (*See* Doc. No. 45.)   As such, his claims for injunctive relief may be moot.   *See, e.g., Green v. Branson,* 108 F.3d 1296, 1300 (10th Cir. 1997) (claims for injunctive relief against prison officials are moot when the plaintiff has been released from prison).   However, a search of the CDOC's website indicates that Plaintiff has absconded from parole.   http://www.doc.state.co.us/oss/index.php?ref=home (search "Woodstock, Jonathan," last visited Feb. 24, 2014.)   Because Defendants have not raised this issue, the court declines to address whether his parole violation could mean that his request for injunctive relief is "capable of repetition yet evading review."   *See McAlpine v. Thompson,* 187 F.3d 1213, 1215 (10th Cir. 1999).

[5]  The court does not construe Plaintiff's Amended Complaint to assert a claim under the Eighth Amendment for failure to protect him from being assaulted on January 25, 2012.   Indeed, although the CDOC Defendants have construed his Amended Complaint to assert such a claim (CDOC Defs. Mot. at 5-7), Plaintiff clarifies in his Response to the CDOC Defendants' Motion that he has not asserted a failure to protect claim.   (Response CDOC Defs. Mot. at 9.)

would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted).

To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The officials must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Thus, deliberate indifference entails "more than mere negligence," although it is not necessary that the acts or omissions be taken "for the very purpose of causing harm or with knowledge that harm will result. *Id.* at 835.

### 1.      *Medical Provider Defendants*

Plaintiff's claims against Defendants Boyd, Spinuzzi, Hodge, and Phillips are effectively the same—that is, despite holding medical appointments with Plaintiff for his hernia and seeing Plaintiff in physical pain, they declined to schedule him for a surgery consultation, provide him with pain medication, or provide him with a hernia truss.

Defendants have conceded that Plaintiff alleges sufficient facts to demonstrated the objective element   Thus, the court considers only the subjective element—that is, whether Plaintiff has sufficiently alleged that Defendants Boyd, Spinuzzi, Hodge, and Phillips knew of and disregarded an excessive risk to his health or safety.   *Farmer*, 511 U.S. at 837.

The court finds that Plaintiff allegations fail to satisfy the subjective element.   A prisoner does not have a valid claim for deliberate indifference simply because he was denied "a particular course of treatment" that he desired.   *Callahan v. Poppell,* 471 F.3d 1155, 1160 (10th Cir. 2006); *see also Henderson v. Secretary of Corrs.,* 518 F.2d 694, 695 (10th Cir. 1975) (a "prisoner's right is to medical care not to the type or scope of medical care which he personally desires.").   Importantly, "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers,* 475 U.S. 312, 319 (1986).   Deliberate indifference requires a higher degree of fault than negligence or even gross negligence.   *Berry v. City of Muskogee,* 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted).

> [O]ur case law firmly establishes that the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment.   Examples of such matters that traditionally fall within the scope of medical judgment are decisions as whether to consult a specialist or undertake additional medical testing.   A prison doctor does not violate the Eighth Amendment's prohibit on cruel and unusual punishment when he simply resolves the question whether additional diagnostic techniques or forms of treatment is indicated.

*Heidtke v. Corrs. Corp. of Am.,* 489 F. App'x 275, 280 (10th Cir. 2012).

Plaintiff's allegations that Defendants Boyd, Spinuzzi, Hodge, and Phillips denied him a surgical consultation and a hernia truss amount to nothing more than his disagreement with their medical judgments.   All five of the Defendants saw Plaintiff for his hernia and reached the same conclusion—i.e, that surgery and a hernia truss were not necessary to treat Plaintiff's hernia. Plaintiff is not entitled to a course of treatment of his choice and his lay opinion that surgery and

a hernia truss were necessary is not sufficient to establish deliberate indifference under the Eighth

Amendment.   Even if Defendants Boyd, Spinuzzi, Hodge, and Phillips were incorrect to

conclude that Plaintiff did not require a surgery consultation or hernia truss, a "negligent failure

to provide adequate medical care, even one constituting medical malpractice, does not give rise

to a constitutional violation.   *Self v. Crum,* 439 F.3d 1227, 1233 (10th Cir. 2006).

Plaintiff's reliance on *Gonzalez v. Feinerman,* 663 F.3d 311 (7th Cir. 2011) does not

prompt the court to reach a different conclusion.   There, the plaintiff did not challenge the initial

course of treatment or even the treatment he received within *five* years after his diagnosis.   *Id.* at

314.   Instead, the facts indicated that, even though the plaintiff's hernia had not abated after five

years and, instead, his condition and associated pain had grown demonstrably worse, the

defendants never altered their course of treatment.   *Id.*   Under those specific circumstances, the

Seventh Circuit concluded that the physicians were obligated not to persist in ineffective

treatment and that the delay exhibited could constitute deliberate indifference, even though the

condition was merely painful and not life threatening.   *Id.* at 315.

Here, Defendants persisted in their course of treatment for just over a year.   Further,

Plaintiff has not submitted any factual allegations indicating that his condition had worsened;

indeed, to the contrary, at the time Plaintiff was seen at SCCF, Defendant Phillips observed that

Plaintiff "did not need further medical treatment" (Am. Compl. at 14).   Accordingly, Plaintiff's

allegations are not on par with the stark facts presented in *Gonzalez.*

Plaintiff's allegations that Defendants Boyd, Spinuzzi, Hodge, and Phillips denied him pain medication are likewise insufficient.   "An allegation of denial of pain medication may form the basis for a deliberate indifference claim."   *Benning v. Webster,* No. 08-cv-00399-PAB-CBS, 2009 WL 798861, at *7 (D. Colo. Mar. 24, 2009) (citations omitted).   However, here Plaintiff makes only barebones allegations that Defendants Boyd, Spinuzzi, Hodge, and Phillips denied him pain medication.   Further, in his Response to the CDOC Defendants' Motion to Dismiss, Plaintiff concedes that he not denied all pain medication—instead, he received over-the-counter pain medication.   (Resp. CDOC Defs. Mot. at 2, 6.)   As with the decision not to schedule Plaintiff for a surgery consultation or provide him with a hernia trust, the decision to provide Plaintiff with over-the-counter pain medication, instead of prescription pain medication, is a matter of medical judgment that does not implicate the Eighth Amendment.   *Persaud v. Doe,* 213 F. App'x 740, 745 (10th Cir. 2007).

Accordingly, the court finds that Plaintiff's allegations that he was denied prescription pain medication, a hernia truss, and a surgical consult fail to state a claim for violations of the Eighth Amendment.   Therefore, the Motions to Dismiss are properly granted with respect to Defendants Boyd, Spinuzzi, Hodges, and Phillips.

### 2.   *Defendants Brown and Larson*

Plaintiff's second claim alleges that Defendants Brown and Larson were deliberately indifferent to Plaintiff's medical needs by refusing to release him from his work detail due to his hernia.   An inmate's allegations that prison officials knowingly forced him to perform medically

16

inappropriate work implicates the Eighth Amendment.   *Grady v. Edmonds,* No. 06-cv-01612-DME-PAC, 2007 WL 2986167, at *6 (citing *Jackson v. Cain,* 864 F.2d 1235, 1246 (5th Cir. 1989)) "In the work assignment context, prison officials are deliberately indifferent when they knowingly compel convicts to perform physical labor which is beyond their strength, or which constitutes a danger to their health, or which is unduly painful." *Blaurock v. Kan. Dep't of Corrs,* 526 F. App'x 809, 813 (10th Cir. 2013) (quoting *Choate v. Lockhart,* 7 F.3d 1370, 1374 (8th Cir. 1993)).

The court finds that Plaintiff fails to states a claim against Defendants Brown and Larson. Plaintiff alleges that he provided "necessary documentation" to Defendant Brown, his work supervisor, regarding his hernia, and complained of physical distress and excruciating pain from his job duties.   Notably, however, Plaintiff's Amended Complaint does not contain any allegations regarding the nature of his work duty assignment or the tasks involved.[6]

Without such allegations, the court cannot determine that Defendants Brown and Larson knowingly compelled him to performed physical labor that was dangerous to his health or was unduly painful.   *Blaurock,* 526 F. App'x at 813.   For example, if Plaintiff's job assignment was a desk job or another similar position that does not involve physical labor, it would not have been

---

[6] In his Response to the CDOC Defendants' Motion, Plaintiff states that he was a Cart Pusher at CCF, which involved pushing carts that weighed well over 200 pounds, even when empty. (Resp. CDOC Defs. Motion at 3.)   Plaintiff also states that he had a 25 pound weight restriction on his job duties due to his hernia.   (*Id.*)   However, the court cannot consider these additional facts, as its review under Rule 12(b)(6) is limited to the four corners of the Complaint.   *See Oxendine v. Kaplan,* 241 F.3d 1271, 1275 (10th Cir. 2001); *Douglas v. City of Ft. Collins,* No. 12-cv-02615-MSK-MEH, 2013 WL 5609350, at *1 n.1 (D. Colo. Oct. 11, 2013).

unreasonable for Defendants Brown and Larson to fail to recognize a risk of pain or danger due

to Plaintiff's hernia, even despite Plaintiff's complaints of physical distress and pain.   However,

on the other hand, if Plaintiff's job assignment required heavy lifting or other laborious tasks, it

would be more likely that, in light of Plaintiff's complaints, Defendants Brown and Larson

knowingly compelled Plaintiff to perform physical labor that presented a danger to his hernia and

caused him undue pain.[7]

Therefore, because Plaintiff's allegations failed to identify his work assignment or

describe any physical labor associated therewith, the court finds that Plaintiff has failed to nudge

his claim against Defendants Brown and Larson from possible to plausible.   *Iqbal,* 556 U.S. at

678.   As such, the court finds that Plaintiff fails to state a claim against Defendants Brown and

---

[7]      Defendants Brown and Larson argue, even if Plaintiff had demonstrated that his job responsibilities involved physical labor, they nevertheless did not personally participate in any alleged Eighth Amendment violation.   More specifically, Defendants Brown and Larson point out that Administrative Regulation (AR) 850-03, case managers only recommend offenders for prison job assignments and a separate classification committee actually makes assignments. (CDOC Mot. at 11 (citing AR 850-03(IV)(B)).   *See also Ray v. Aztec Well Serv. Co.,* 748 F.2d 888, 889 (10th Cir. 1984) (the court may take judicial notice of state administrative regulations).

The court is not convinced by this argument.   Even to the extent that case managers do not make job assignments, Defendants Brown and Larson were not Plaintiff's case managers—instead, Defendant Brown was Plaintiff's job supervisor and Defendant Larson was Defendant Brown's supervisor.   AR 850-03(IV)(E)(1) separately provides that "[i]f any offender states to their Program Provider [i.e. supervisor] that he/she cannot perform the essential functions of the assignment without an accommodation, the Program Provider shall contact the [ADA Inmate Coordinator] or other appropriate designee" to address the need for a reasonable accommodation.   *See also* AR 850-03(III)(T) (defining "Program Provider" as a "DOC employee, contract worker, or volunteer who supervises offenders in their respective assignment, including labor supervisors . . . .").   Thus, Defendants Brown and Larson were not powerless to address the alleged pain faced by Plaintiff in performing his job assignments and could have been deliberately indifferent by failing to address Plaintiff's complaints of pain through the procedures outlined in AR 850-03(IV)(E)(1).

Larson for violations of the Eighth Amendment and recommends that the CDOC Defendants

Motion to Dismiss be granted with respect to Plaintiff's second claim for relief.

**D.      *Qualified Immunity***

Defendants also argue they are entitled to qualified immunity in their individual

capacities.   (CDOC Defs. Mot. at 13-15; Spinuzzi Mot. at 4-5.)   Whether Defendants are

entitled to qualified immunity is a legal question.   *Wilder v. Turner*, 490 F.3d 810, 813 (10th

Cir.2007).

> Resolution of a dispositive motion based on qualified immunity involves a
> two-pronged inquiry.   First, a court must decide whether the facts that a plaintiff
> has alleged or shown make out a violation of a constitutional right. Second, . . .
> the court must decide whether the right at issue was clearly established at the time
> of the defendant's alleged misconduct.   With regard to this second [prong], the
> relevant, dispositive inquiry in determining whether a right is clearly established is
> whether it would be clear to a reasonable officer that his conduct was unlawful
> under the circumstances presented.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks

and citations omitted).   "A reviewing court may exercise [its] sound discretion in deciding

which of the two prongs of the qualified immunity analysis should be addressed first in light of

the circumstances in the particular case at hand."   *Id.*   "Qualified immunity is applicable unless"

the plaintiff can satisfy both prongs of the inquiry.   *Id.*   Having concluded that Plaintiff has

failed to state a claim for violations of his Eighth Amendment rights, Defendants are entitled to

qualified immunity from Plaintiff's claims.

WHEREFORE, for the foregoing reasons, I respectfully

19

RECOMMEND that "Defendant Betty Spinuzzi's Motion to Dismiss Plaintiff's Complaint" (Doc. No. 23) and Defendant Boyd, Hodge, Phillips, Larson, and Brown's "Motion to Dismiss Plaintiff's Amended Complaint" (Doc. No. 28) be GRANTED.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).   A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.   "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."   *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).   Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.   *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");   *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);   *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 25th day of February, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge